# CHARTER PUBLIC SCHOOL PARENTS AND CHILDREN MOTION TO INTERVENE EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CRATON LIDDELL, et al., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF EDUCATION OF THE CITY OF ST. LOUIS, MISSOURI, et al., <br><br> Defendants. | CASE NO.: 4:72-CV-100 HEA |

## CHARTER PUBLIC SCHOOL PARENTS AND CHILDREN'S SUGGESTIONS IN OPPOSITION TO MOTION TO ENFORCE SETTLEMENT

This Court should deny the Joint Motion to Enforce the Settlement Agreement. In March 1999, the State of Missouri, the St. Louis Public School District, the United States, the class comprised of African-American students eligible to receive schooling in the City of St. Louis, and a number of adjacent school districts reached an historic settlement to resolve a decades-long court battle over the appropriate remedy for *de jure* racial segregation in St. Louis public schools. Throughout the settlement, the parties agreed that funding available for education of students at public schools in St. Louis should follow the student, regardless of which school or school district the student attended. Now, more than seventeen years after that settlement and more than ten years after the Missouri legislature changed the educational funding formula with the passage of Senate Bill 287 in 2005, the Special Administrative Board and the class

1

representatives are asking this Court to determine that the State of Missouri, in following the law, has breached the agreement for the last ten years.

This Court should deny the Motion to Enforce the Settlement Agreement for several reasons. First, the settlement agreement has not been breached. The agreement – in spirit and text – required educational funding to follow the pupils, not to remain in the school district. As pupils have transitioned from the admittedly failed St. Louis Public School District to the charter public schools, the state and local funding available for their education has followed them to the charter public schools. This is entirely consistent with the settlement agreement. The settlement agreement expressly contemplates changes in the law that could affect the funding for education, but the motion makes no effort to show that the 2005 changes in the law had a *disproportionate* financial impact on the Special Administrative Board. Having failed to even try to make this necessary showing, the motion must be denied. Second, the Motion to Enforce the Settlement Agreement is barred by res judicata. The Special Administrative Board and the class representatives have returned to this court seeking enforcement of the settlement agreement after the alleged breach, and after giving notice of the alleged breach, and they did not raise this issue despite having a full and fair opportunity to do so. Third, the Charter Public School Parents and Children have relied on the funding and available educational opportunities at charter public schools for ten years since the alleged breach. It would gravely prejudice these families for the formula, which was approved by the legislature, to be altered by this Court on the present motion. The equitable defense of laches should apply to defeat the motion.

## I. THE SETTLEMENT AGREEMENT HAS NOT BEEN BREACHED.

### A. Charter Schools are a necessary component of the legislation that enabled the settlement.

In 1998, the Missouri legislature passed Senate Bill 781, which was a necessary precondition to the settlement of this case.[1] In addition to the specific provisions related to funding for a settlement, the bill also authorized the creation of charter public schools in St. Louis and Kansas City, the two cities that had long-running court battles over *de jure* racial segregation. State and local education leaders saw charter schools as a way to give African-American students greater educational opportunity. The creation of charter public schools, then, was part and parcel of the improvements made to the educational opportunities for children suffering from the vestiges of decades of racial segregation in St. Louis public schools.

By all accounts, the option has been an attractive one to public school students in St. Louis. In 2014-2015 school year, 9,587 students enrolled in the charter public schools, and 6,259 of those students (65.2 percent) were African-American, including Mr. Ross's children and Ms. Pierce's children. This has been among the meaningful educational options available to African-American students since the passage of Senate Bill 781, which was integral to the settlement.

### B. Missouri law and the Settlement Agreement intend for per-pupil educational funding to be the same at all public schools within the district.

The Missouri legislature included funding provisions in SB781 so that the funding of education at charter public schools – on a per pupil basis – would be equal to the funding of education at non-charter public schools. *See* Sec. 160.415.2 (requiring school districts to provide equivalent funding per pupil to charter public schools), RSMo. 1999. When the formula was amended in 2005 by the passage of Senate Bill 287, the language of the statute changed, but the underlying principle of equivalent per pupil funding did not change. *See* Sec. 160.415.2, RSMo.

---

[1] As this Court noted, "passage of this law gave great impetus to the settlement process." Doc. 382-1 at 3.

3

Supp. 2006. This fundamentally makes sense, as it is the pupils who benefit from public educational funding, regardless of which public school they attend.

As the Missouri Court of Appeals concluded (in prior litigation regarding underfunding for charter schools), "the overall purpose of the statute is to ensure that charter schools are treated equitably in the distribution of state aid to provide for the children that they serve." *State ex rel. St. Louis Charter School v. State Board of Education*, 438 S.W.3d 437, 445 (Mo. Ct. App. 2014); *see also State ex rel. School District of Kansas City v. Williamson*, 141 S.W.3d 418, 421-22 (noting that the Missouri Charter School acts requires the charter schools to receive "the per-pupil funding that the local school district would have received for each student…"). These funding considerations have allowed for the charter public schools in the City of St. Louis to grow and prosper as a meaningful alternative to education in the non-charter public schools. Prior to the passage of SB 781 (a necessary precondition of the March 1999 settlement agreement), this alternative did not exist.

Like the statutory scheme, the settlement agreement expressly contemplates that students eligible for services in the St. Louis Public School District would receive equivalent funding for their education, regardless of whether they were educated at a school in the district or elsewhere. As agreed by the parties, sending districts and receiving districts are required to transfer identical "per pupil" funds to certain students who are receiving educational services from entities other than the district. Doc. 381-2 at 29 (page 32 of 141). The Motion to Enforce Settlement seeks to take funds intended for education of students at public schools in St. Louis and transfer it to the exclusive province of the Special Administrative Board.

### C. The Local Sales Tax was intended to provide funds for all students at public schools in St. Louis, not to create a windfall for the Special Administrative Board.

The settlement agreement was intended to provide "an appropriate education for St. Louis children." Doc. 381-2 at 2. The Charter Public School Parents and Children are among those it is expressly intended to benefit. In the order approving the 1999 settlement, this Court noted that the settlement was conditioned on passage of a local sales or property tax "that would generate approximately $20m per year *for the public schools*." Doc. 382-1 at 3 (emphasis added). Charter schools are among the *public schools* intended to benefit from the passage of the local sales tax. The electorate of St. Louis approved this additional tax so that the children who needed remedies from the lingering effects of *de jure* racial segregation would have adequate funding to meet their educational needs. Those needs are the same for those children who choose to attend charter public schools as those children who are educated in noncharter public schools in the district. In the settlement, the parties' fundamental agreement is that the funds should follow the students who reside in the district for their educational needs at public schools. The relief being sought violates that fundamental and guiding principle of this settlement, as it would take funds that should be provided for the education of students at charter public schools in St. Louis and return it to the school district.

The Special Administrative Board claims that the district alone is entitled to receive the revenues from the local sales tax, and they are not obligated to provide any of the revenue to the charter public schools. This is not required by the settlement agreement, nor authorized by Missouri law. While the practice of the Special Administrative Board prior to the passage of SB 287 in 2005 was apparently to withhold sales tax funds from the charter public schools,[2] it is not at all clear that the settlement agreement authorized or required that practice. Regardless, at least

---

[2] See Doc. 382-7.

5

one charter public school in operation during those years successfully sued to recover underpayment of per-pupil education funds from the district, in excess of $500,000 each year. *See State ex rel. St. Louis Charter School v. Board of Education*, 438 S.W.3d 437 (Mo. Ct. App. 2014).[3] The practices in place during that time frame generated sufficient attention that the Missouri legislature changed the way charter public schools could be funded with the passage of Senate Bill 287 in 2005.

"The revised formula [in Senate Bill 287] attempted to remedy inequities resulting from school funding that is financed in part by state funds and in part by local funds. It reflected a view that schools with greater 'local effort' contributions require less state financial assistance to meet the costs of providing a free public education." *Committee for Educational Equality v. Missouri*, 294 S.W.3d 477, 483 (Mo. banc 2009) (affirming constitutionality of Senate Bill 287). Essentially, the change in the funding formula sought to make sure that all students educated at public schools within a school district, whether they be charter schools or non-charter schools, would receive the same public funding on a per-pupil basis. The present motion seeks to take funds that are allocated to charter public schools based on their enrollment of students and re-allocate them to the district, where the students have chosen *not* to be educated. This result would generate a windfall for the district and would unduly harm Charter School Parents and Children.

> **D.     The Settlement Agreement expressly contemplated changes in the law and this does not violate its terms.**

The parties to the agreement expressly contemplated that the law could change in the intervening ten years following the March 1999 settlement agreement. The parties agreed that

---

[3] The underpayments to a single school in that case were: FY2003-2004 - $693,526.27; FY2004-2005 - $562,710.62; FY2005-2006 - $623,716.13; and FY2006-2007 - $1,501,142.44. *State ex rel. St. Louis Charter School*, 438 S.W.2d at 448.

6

"any statutory or administrative changes (for example to the State Foundation Formula)" would not affect the state's financial obligations if they had a "disproportionate adverse financial impact" upon the Special Administrative Board. Doc. 381-2 at 15-16. The joint motion claims that these changes in the funding formula had an "adverse effect" on the district funding (Doc. 381 at 11-12), but they do not claim that this effect has been "disproportionate."

Indeed, the reason that charter public schools have received the funds is that they are educating Mr. Ross's children and Ms. Pierce's children, as well as thousands of other children that would otherwise be educated in the district. DESE has applied the law consistent with legislative intention to make certain that the children enrolled in charter public schools (including Ms. Pierce and Mr. Ross's children) receive adequate funding for their education. This does not create a disproportionate adverse financial impact upon the Special Administrative Board. If the educational offerings provided by the schools under the oversight of the Special Administrative Board were more attractive to students, they would receive more state aid under the current state funding formula. It is not a breach of the settlement agreement for the State of Missouri to allocate funds to education children at charter public schools in the City of St. Louis so that it is equivalent on a per-pupil basis.

## II.   THE MOTION IS BARRED BY RES JUDICATA.

In April 2016, for the first time, class counsel and the Special Administrative Board come to this Court with their allegations that the State of Missouri has breached the settlement agreement through its consistent application of Missouri law since 2006. In the present motion, the Special Administrative Board and class counsel seek an order requiring the State of Missouri to return $42,517,258 in funds that they claim were paid to charter public schools in breach of the settlement agreement. Doc. 381 at 12, ¶ 24-25. By the Special Administrative Board's own admission, they provided notice of the allegations of breach in a letter to DESE and the Attorney

7

General of Missouri in December 2008. Doc. 381-9. The letter describing the alleged breach was also sent to class counsel, counsel for the United States, and other related parties to the 1999 settlement agreement.[4] The letter was not sent to anyone specifically representing the charter public schools. Between the notice of alleged breach in December 2008 and the filing of this motion in April 2016, the parties returned to this Court on three separate occasions seeking relief related to the settlement agreement. At no time did any party raise the current issues of alleged breach.

In November 2011, the parties to the settlement agreement returned to this Court seeking relief related to the March 1999 settlement. See Doc. 360 (Joint Motion for Ruling on Approval of Agreement). The 2011 agreement was intended to assist the district with "an accumulated operating deficit of $66.3 million" through utilization of "resources from the Desegregation Capital Fund" for certain educational programs. Doc. 360-1. This Court entered an order approving the agreement and finding that "the agreement furthers the goals of the 1999 settlement agreement." Doc. 365 at 1. In November 2011, the amount that the State of Missouri had allegedly "diverted from the District to charter schools" by its consistent application of the funding formula was $20,096,824.[5] Despite knowledge of the alleged breach and provision of notice in 2008, the Special Administrative Board and class counsel did not ask the Court to find that the State of Missouri was in breach in November 2011.

In September 2013, the parties to the settlement agreement returned to this Court seeking approval of an additional agreement under the continuing jurisdiction provided to enforce the

---

[4] The letter was copied to Dr. William Danforth (settlement coordinator), Ms. Frankie Freeman (prominent civil rights attorney in St. Louis), Mr. William Taylor (counsel for the Caldwell-NAACP class), Ms. Veronica Johnson (counsel for the Caldwell-NAACP class), Mr. Michael Middleton (counsel for the Caldwell-NAACP class), Mr. Jeremiah Glassman (counsel for the Plaintiff-Intervenor United States), Mr. William Douthit (counsel for the Liddell class), Mr. Allen Boston (attorney in St. Louis), and Mr. Tom Caradonna (attorney at Lewis Rice, which represents the Special Administrative Board).

[5] See Doc. 381 at 12, ¶ 24. This amount reflects the sum for the fiscal years 2006-07 through fiscal year 2010-11.

8

March 1999 settlement. See Doc. 370 (Joint Motion to Alter Judgment). The 2013 agreement addressed the administration of funds within the ambit of the March 1999 settlement. See Doc. 371-1 (Agreement of the parties regarding transfer of funds). The Court approved the 2013 agreement and made it part of its orders. See Doc. 372. In September 2013, the amount that the State of Missouri had allegedly "diverted from the District to charter schools" by its consistent application of the funding formula was $29,556,247.[6] Despite knowledge of the alleged breach and provision of notice in 2008, the Special Administrative Board and class counsel did not ask the Court to find that the State of Missouri was in breach in September 2013.

In September 2015, the parties to the settlement agreement returned to this Court a third time seeking approval of an agreement under the continuing jurisdiction provided to enforce the March 1999 settlement agreement. See Doc. 373. The 2015 agreement sought approval of use of several million dollars from the Desegregation Capital Fund created in the 1999 settlement agreement to fund educational needs of the Special Adminstrative Board. See Doc. 374-1 (2015 agreement). This Court approved the 2015 agreement and made it part of its orders. See Doc. 375. In September 2015, the amount that the State of Missouri had allegedly "diverted from the District to charter schools" by its consistent application of the funding formula was $42,517,258.[7] Despite knowledge of the alleged breach and provision of notice in 2008, the Special Administrative Board and class counsel did not ask the Court to find that the State of Missouri was in breach in September 2015.

Res judicata applies to bar claims "properly belonging to the subject matter of the litigation and which the parties, exercising reasonable diligence, might have brought forward at that [earlier] time." *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter*

---

[6] See Doc. 381 at 12, ¶ 24. This amount reflects the sum for the fiscal years 2006-07 through fiscal year 2012-13.
[7] See Doc. 381 at 12, ¶ 24. This amount reflects the sum for the fiscal years 2006-07 through fiscal year 2014-2015.

9

*Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991). All four basic identities necessary to res judicata are clearly met, as the parties, subject matter, and cause of action was the same in 2011, 2013, and 2015.

There is no reason that the issues raised in the present motion could not have been raised and litigated among the parties in November 2011, September 2013, or September 2015. In each case, the parties came to Court seeking approval of an agreement regarding the use of funds available pursuant to the March 1999 settlement agreement. In 2011, the Special Administrative Board sought approval for a loan restructuring and use of Desegregation capital funds that would ameliorate an accumulated operating deficit of $66.3 million. At the time, the amount the State of Missouri had provided to charter schools under the funding formula (which the Special Administrative Board and class counsel now claim constitutes a breach) was in excess of $20 million. The Special Administrative Board "exercising reasonable diligence" surely could and should have brought the claims forward at that time. The failure to raise these issues when the parties returned to this Court seeking enforcement of the March 1999 agreement precludes their litigation now.

**III. LACHES SHOULD PRECLUDE THE RELIEF SOUGHT BECAUSE THE CHARTER PUBLIC SCHOOL PARENTS AND CHILDREN WOULD BE BADLY PREJUDICED BY GRANTING THE RELIEF SOUGHT AT THIS LATE DATE**

Laches also bars the relief sought. Even if the movants were correct on the merits (which they are not), and they could survive the application of res judicata (which they cannot), the equitable doctrine of laches should apply to prevent the relief they presently seek. When "unreasonable and unexplained" delay is "accompanied by disadvantage and prejudice," laches bars equitable relief. *Larocca v. State Bd. of Registration for Healing Arts*, 897 S.W.2d 37, 45 (Mo. Ct. App. 1995). Here, the Charter Public School Parents and Children have relied on the

funding provided to charter public schools continuously since 2006 as they have made their decisions about how and where their children should be educated within the public school system in the City of St. Louis. It would unduly prejudice them to conclude, in 2016, that the educational funding formula that the State of Missouri has applied consistently since 2006 breaches the 1999 settlement agreement.

### A. This relief is sought after unreasonable and unexplained delay.

As noted in Section II *supra*, the Special Administrative Board provided notice to all parties to this case (including class counsel) in December 2008 that the funding formula violated the March 1999 settlement agreement.[8] No charter public school parents or children were made aware of the Special Administrative Board's position that funding provided to charter public schools breached the settlement agreement; neither were any charter public schools. Despite returning to this Court three times for orders enforcing the 1999 settlement agreement, at no time between December 2008 and January 2016 did the Special Administrative Board or class counsel complain again that the funding formula violated the March 1999 settlement agreement. They offer no explanation for this unreasonable seven year delay in bringing their present concerns to the attention of this Court.

### B. The relief sought would unduly prejudice Charter Public School Parents and Children.

Charter Public School Parents and Children have been making educational decisions about where their children should enroll and continue their public school education since 2006. Mr. Ross and Ms. Pierce have chosen to enroll their children in charter public schools in the City of St. Louis since that time. Those decisions cannot be unmade. Charter Public School Parents and Children should not be forced to suffer reduced educational resources from those that they

---

[8] Shortly thereafter, in 2009, the Supreme Court of Missouri upheld the lawfulness of the funding formula in *Committee for Educational Equality v. Missouri*, 294 S.W.3d 477 (Mo. banc 2009).

11

have relied upon over the last eight years.  The charter public schools that their children attend have likewise made financial commitments, development plans, hiring and staffing decisions based on the funding that they have received. The relief sought is likely to require adverse changes to those plans, which will have a direct and adverse impact on Charter Public School Parents and Children.

It would similarly disadvantage our clients to require them to transfer to a different educational setting, as the destabilizing effects of the transition would have an adverse impact on their educational achievement. The settlement agreement itself acknowledges the need to "minimize disruption to transfer students and their parents." Doc. 381-2 at 18-19. The relief sought would be intensively disruptive to Charter Public School Parents and Children.

There is no reason that Mr. Ross, Ms. Pierce, and the other thousands of Charter Public School Parents and Children should have to suffer this prejudice. The Special Administrative Board and class counsel had notice of the conduct constituting the breach by December 2008. Instead of taking action, they allowed the funding practices to continue without alteration for more than seven years before seeking any relief. During those years, thousands of families in St. Louis chose to enroll their children in charter public schools, relying on the resources that they had available to provide. To upset the apple cart at this late date is simply inequitable, and is the sort of result that laches is intended to prevent. This Court should apply the doctrine of laches to bar the relief sought in the motion.

**IV.     CONCLUSION**

For the reasons set forth above, this Court should deny the Joint Motion to Enforce the Settlement Agreement.

        Respectfully submitted,

        STINSON LEONARD STREET LLP

        */s/     Jeremy A. Root*
        Charles W. Hatfield, Mo. Bar No 40363
        Khristine A. Heisinger, Mo. Bar No. 42584
        Jeremy A. Root, Mo. Bar No. 59451
        230 W. McCarty St.
        Jefferson City, MO 65101
        Tel.: (573) 636-6263
        Fax: (573) 636-6231
        chuck.hatfield@stinson.com
        khristine.heisinger@stinson.com
        jeremy.root@stinson.com

        *Attorneys for Proposed Intervenor Charter School Parents and Children*

## **CERTIFICATE OF SERVICE**

     I hereby certify that a copy of the foregoing was served by the court's ECF filing service on the 31st day of May, which will notify all parties of record.

                                                          */s/Jeremy A. Root*