# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| CRATON LIDDELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:72CV100 HEA |
| | ) | |
| BOARD OF EDUCATION OF THE CITY OF ST. LOUIS, MISSOURI, et al., | ) ) ) ) | |
| Defendants. | ) | |

## OPINNION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant State of Missouri's Motion to Strike the "Motion to Enforce Court Order Approving Settlement, to Enforce Settlement Agreement, and to Hold the State in Contempt," [Doc. No. 389] and the Joint Motion of Plaintiffs and Special Administrative Board to Enforce Court Order Approving Settlement, to Enforce Settlement Agreement, and to Hold the State in Contempt, [Doc. No. 381]. The parties have submitted memoranda in support of their positions regarding the pending motions. For the reasons set forth below, the Motion to Strike will be to the granted to the extent provided herein.

### Facts and Background

In the March 12, 1999 Order approving the Settlement Agreement at issue currently, the Court detailed the facts and background giving rise to the Settlement Agreement.

> This suit was filed in District Court in 1972 by a group of black parents on behalf of their children seeking school desegregation within the St. Louis public schools. The action resulted in a settlement plan approved by the District Court in 1983. Liddell v. Board of Educ., 567 F.Supp. 1037 (ED. Mo. 1983, aff'd, Liddell v. Missouri, 731 F.2d 1294 (8th Cir. 1984). The plan, which has been governing the case since then, provides for quality education programs in city schools, capital improvements of city schools, magnet schools in the city, a voluntary interdistrict transfer plan, and a vocational education plan. This remedy has been funded by the State and the City Board of Education, and has been supervised by this Court on an ongoing basis with the assistance of various Court-appointed advisors and monitors.

> In February 1996, the Court held a hearing on the State's motion for a declaration that City Board no longer operated a segregated, or dual, public school system, but rather that "unitary status" had been achieved and that the State's funding obligations were thus over. Following the hearing, the Court appointed Dr. William Danforth as Settlement Coordinator in the hope that the parties could reach a negotiated resolution to the case.

> In May 1998, the Missouri General Assembly passed Senate Bill 781 (SB 781), which provides, inter alia, for approximately $40m per year in state funds for St. Louis city schools on the condition that (1) on or before March 15, 1999, the state attorney general notify the reviser of statutes that a "final judgment" had been entered in this case as to the State and its officials, and (2) the voters of the City of St. Louis pass a sales or property tax which would generate approximately $20m per year for the public schools.

> Passage of this law gave great impetus to the settlement process. On January 28, 1999, the Settlement Coordinator filed a statement with the

Court that the parties to this action had reached an agreement for settlement of the case. The Coordinator filed a copy of the agreement, noting that the vocational education aspect was still under discussion and that certain funding numbers awaited final calculation. The fact that an agreement had been reached was publicized in the local media, and on February 2, 1999, the voters of the City of St. Louis approved a sales tax for the city schools, as called for in SB 781.

*Memorandum and Order,* March 12, 1999 p.1-3 (Limbaugh, J. presiding) (footnotes omitted).

The Settlement Agreement ("Desegregation Settlement Agreement" or "DSA") was incorporated into Judge Limbaugh's Memorandum and Order. *Id.*, at p. 19.

The certified classes of plaintiffs, the Caldwell-NAACP plaintiffs and the Liddell plaintiffs ("Plaintiffs") and the Special Administrative Board of the Transitional School District of the City of St. Louis, ("SAB")[1] move the Court to enter an Order enforcing the DSA, seeking

> (1) a directive that the State and the Missouri Department of Elementary and Secondary Education ("DESE") fully comply with this Court's Settlement Order and the DSA by discontinuing the practice of reallocating "Desegregation Sales Tax" proceeds to school entities other than the District; (2) a finding that by violating the Settlement Order, the State is in contempt of court; (3) a directive that the State reimburse the SAB for any Desegregation Sales Tax proceeds that have been wrongfully

---

[1] Pursuant to §§ 162.621.2 and 162.1100 Mo.Rev.Stat., the SAB is the sole party with the power to enter into agreements or to pursue legal action on behalf of the St. Louis Public Schools District (the "District"). The Court has permitted SAB to be substituted as a party in this case in place of the City Board. *See* Doc. No. 363.

reallocated by the State in violation of the Settlement Order and the DSA; and (4) an award of attorneys' fees incurred in pursuing this Motion.

The State claims the Court lacks jurisdiction to enter any orders regarding the Motion to Enforce, and moves to strike it.

## Discussion

Plaintiffs and the SAB rely on Section 22.B.3 of the Settlement Agreement for the authority to bring their Joint Motion to Enforce. Section 22.B.3 provides:

> In the event of a dispute between the State of Missouri or State and City Board defendants *and* the plaintiffs (including the United States) the *plaintiffs may seek to compel specific performance of the terms of this agreement in federal court*, but plaintiffs' rights in any such claim shall be limited to such a claim for specific performance, and the parties agree that shall be the only purpose and basis for any further action by this Court after the Court's approval of this agreement. *The parties hereby waive and dismiss all rights to any further relief from this Court*.

Settlement Agreement, § 22.B.3. (Emphasis added).

The State of Missouri, in seeking to strike the motion, relies on Section 22.B.2 of the DSA, which provides:

> In the event of a dispute *between or among the State of Missouri, the City School Board*, the Suburban districts, and all other officers, agents, agencies and subdivisions of the State concerning their contract obligations, *the matter* **shall** *be adjudicated only in State Court*. Any relief in such an action shall be limited to specific performance of the Agreement. Venue for such an action brought by any suburban district(s) will be proper only in the Circuit Court of St. Louis County. Venue for such an action brought by the City Board will be proper only in the Circuit Court of the City of St. Louis.

Settlement Agreement, § 22.B.2. (Emphasis added).

[4]

A federal district court "has inherent power to enforce a settlement agreement as a matter of law when the terms are unambiguous." *Harper Enters., Inc. v. Aprilia World Serv. USA, Inc.*, 270 Fed.Appx. 458, 460 (8th Cir. 2008).

The terms of the DSA at issue are unambiguous. In the event of a dispute between the State of Missouri and the SAB, actions for specific performance are to be filed only in the Circuit Court of the City of St. Louis. In the event of a dispute between the State of Missouri and Plaintiffs, motions for specific performance may be filed in this Court. The issue has arisen, however, because the SAB and Plaintiffs have joined together seeking specific performance of the Settlement Agreement. Nothing in the Settlement Agreement addresses this particular approach of the different parties seeking specific performance.

Under the terms of the DSA, the SAB is prohibited from seeking any relief in this Court in a dispute between the SAB and the State. Conversely, plaintiffs, and only plaintiffs, are given the option of pursuing specific performance in this Court. To allow a joint motion would, in effect, circumvent the provisions of Section 22.B.2, a provision that was bargained for and agreed to by the parties, thereby depriving the State of the benefit of its bargain. Under the express terms of the Settlement Agreement, the Motion to Enforce, therefore is not properly before the Court and will be stricken.

Plaintiffs may, pursuant to the DSA, refile the Motion solely on behalf of themselves, keeping in mind that they are also free to pursue their motion in the State Court, as Section 22.B.3 is permissive rather than mandatory. Considering that the only venue for the SAB is the State Court, it may behoove Plaintiffs to once again join the SAB in a motion filed in the State Court seeking the relief sought; issues of abstention and comity may be avoided by the filing of a joint motion in the State Court.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant State of Missouri's Motion to Strike the "Motion to Enforce Court Order Approving Settlement, to Enforce Settlement Agreement, and to Hold the State in Contempt," [Doc. No. 389], is **GRANTED**.

**IT IS FURTHER ORDERED** that Motion to Enforce Court Order Approving Settlement, to Enforce Settlement Agreement, and to Hold the State in Contempt, [Doc. No. 381], is stricken, without prejudice to Plaintiffs refiling the motion on behalf of themselves only.

Dated this 26th day of March, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE