# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

April 20, 2023

Ms. Emily Ann Dodge
ATTORNEY GENERAL'S OFFICE
207 W. High Street
P.O. Box 899
Jefferson City, MO  65102-0000

RE:  20-3574  Deric Liddell, et al v. State of Missouri
     20-3658  Deric Liddell, et al v. Lediva Pierce, et al
     21-1262  Deric Liddell, et al v. State of Missouri, et al

Dear Counsel:

The court today issued an opinion in this case. Judgment in accordance with the opinion was also entered today.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc must be received in the clerk's office within 45 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 45 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

CRJ

Enclosure(s)

cc:  Mr. Mark Jonathan Bremer
     Ms. Alixandra S. Cossette
     Mr. William Auguston Douthit
     Mr. Thomas A. Durphy
     Mr. Charles W. Hatfield
     Ms. Margaret A Hesse
     Mr. Jeff P. Johnson
     Mr. James Robert Layton
     Mr. Gregory J. Linhares

Mr. Paul R. Maguffee
Ms. Caitlin M. Meyers
Mr. Jeremiah Joseph Morgan Sr.
Mr. David Paul Niemeier
Mr. Ronald Alan Norwood
Mr. Jeremy A. Root

District Court/Agency Case Number(s):   4:72-cv-00100-HEA
4:72-cv-00100-HEA
4:72-cv-00100-HEA

# United States Court of Appeals
## For The Eighth Circuit

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

April 20, 2023

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

      RE:  20-3574  Deric Liddell, et al v. State of Missouri
            20-3658  Deric Liddell, et al v. Lediva Pierce, et al
           21-1262  Deric Liddell, et al v. State of Missouri, et al

Dear Sir or Madam:

    A published opinion was filed today in the above cases.

    Counsel who presented argument on behalf of appellant/cross appellee State of Missouri in 20-3574 and appeared on the appellant/cross appellee's brief, was Dean John Sauer, Solicitor General, of Jefferson City, MO. The following attorney(s) also appeared on the appellant/cross appellee's brief; Emily Ann Dodge, AAG, of Jefferson City, MO.

    Counsel who presented argument on behalf of appellants/cross appellees Ms. Lediva Pierce and Michelle Neals in 20-3658 and appeared on the appellants/cross appellees' brief, was Jeremy A. Root, of Jefferson City, MO. The following attorney(s) also appeared on the appellants/cross appellees' brief; Charles W. Hatfield, of Jefferson City, MO.  Alixandra S. Cossette, of Jefferson City, MO.

    Counsel who presented argument on behalf of appellee/cross appellant Mr. Deric James Liddell, and appeared on the brief of appellees/cross appellants' Caldwell/NAACP and Mr. Deric James Liddell, was William Auguston Douthit, of St. Louis, MO.  The following attorney(s) also appeared on the appellants/cross appellees' brief; Christopher A. Pickett, of St. Louis, MO., David Paul Niemeier, of St. Louis, MO., Caitlin M. Meyers, of St. Louis, MO.

    Counsel who represented the amicus group Confluence Academy, Inc., was Margaret A. Hesse, of Saint Louis, MO., James Robert Layton, of Saint Louis, MO.

    Counsel who represented the amicus group National Parents Union, was Mark Jonathan Bremer, of Saint Louis, MO., Thomas A. Durphy, of Saint Louis, MO., Daniel Leo Human, of Saint Louis, MO.

    The judge who heard the cases in the district court was Honorable Henry Edward Autrey.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

CRJ

Enclosure(s)

cc:  MO Lawyers Weekly

District Court/Agency Case Number(s):  4:72-cv-00100-HEA
4:72-cv-00100-HEA
4:72-cv-00100-HEA

# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3574
_____

Deric James Liddell; Caldwell/NAACP

*Plaintiffs - Appellees*

United States of America

*Intervenor Plaintiff*

Lediva Pierce; Michelle Neals

*Intervenor Plaintiffs - Appellees*

v.

Special School District

*Defendant*

State of Missouri

*Defendant - Appellant*

St. Louis County; City Board; Lindbergh School District; Maplewood Richmond Heights School District; Board of Education of the City of St. Louis

*Defendant*s

------------------------------

Confluence Academy

*Amicus on Behalf of Appellant(s)*
_____

No. 20-3658

_____

Deric James Liddell; Caldwell/NAACP

*Plaintiffs - Appellees*

United States of America

*Intervenor Plaintiff*

Lediva Pierce; Michelle Neals

*Intervenor Plaintiffs - Appellants*

v.

Special School District

*Defendant*

State of Missouri

*Defendant - Appellee*

St. Louis County; City Board; Lindbergh School District; Maplewood Richmond Heights School District; Board of Education of the City of St. Louis

*Defendant*s

-------------------------------

Confluence Academy; National Parents Union

*Amici on Behalf of Appellant(s)*
_____

-2-

No. 21-1262
_____

Deric James Liddell; Caldwell/NAACP

*Plaintiffs - Appellants*

United States of America

*Intervenor Plaintiff*

Lediva Pierce; Michelle Neals

*Intervenor Plaintiffs - Appellees*

v.

Special School District

*Defendant*

State of Missouri

*Defendant - Appellee*

St. Louis County; City Board; Lindbergh School District; Maplewood Richmond Heights School District; Board of Education of the City of St. Louis

*Defendants*

------------------------------

National Parents Union

*Amicus on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

-3-

_____

Submitted: September 20, 2022
Filed: April 20, 2023

_____

Before COLLOTON, WOLLMAN, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

Two parties to a decades-old school-desegregation agreement believe that Missouri improperly diverted $86 million from the St. Louis Public School District to a group of charter schools. We disagree, so we affirm the district court's judgment, but vacate the part requiring charter schools to spend those funds on "desegregation measures."

I.

This case started more than fifty years ago when Minnie Liddell sued to desegregate the St. Louis public school system. As the litigation moved forward, the NAACP joined the lawsuit, and the State of Missouri (among others) became a defendant. In 1983, after years battling in court, the parties struck a deal that lasted until 1999, when they agreed to end Missouri's remedial obligations.

The end of Missouri's role did not mean desegregation was over. The St. Louis School Board agreed to implement its own "measures" for "at least ten years," including "magnet schools," "[a]ll-day kindergarten," and "[s]ummer school." The funding would come from two sources: state aid and a special sales tax. The more revenue from the tax, the greater the amount of state aid the St. Louis Public School District would receive. *See* Mo. Rev. Stat. § 163.031.1 (1998).

-4-

The Missouri Legislature, for its part, ratified the parties' settlement agreement and created a charter-school option. Open to everyone, *see id.* § 160.410.2, charter schools had no legacy of segregation and remained "independent" of local school boards, *id.* § 160.400.1.

They also receive funding under a separate formula. The money originally flowed through the St. Louis Public School District, which was supposed to "pay" the charter schools their share on a "per[-][]pupil" basis. *Id.* § 160.415.2(1). Based on its interpretation of the settlement agreement, however, the District thought it could keep all the special-sales-tax revenue for itself.

A group of charter schools complained to the Missouri Legislature, which altered the funding formula in 2006. The revised formula, part of Senate Bill 287, is what has led to today's dispute. The bill had two important features. First, it clarified that charter schools have the right to receive their per-pupil share of "local tax revenues," including the special sales tax. Mo. Rev. Stat. § 160.415.2(1) (2006). Second, it gave charter schools the option of receiving direct funding, rather than having the St. Louis Public School District serve as an intermediary. *See id.* § 160.415.4. No matter the approach, each dollar Missouri gave to a charter school meant the St. Louis Public School District would receive one dollar less. *Id.*

Opposition soon followed. The complaint was that the new formula improperly diverted funds "that the District [w]ould otherwise [have] receive[d]" under the settlement agreement. Despite unhappiness with the change, the case remained at a standstill. Then, nearly a decade later, the St. Louis Public School District[1] and one of the plaintiffs asked the district court to enforce the settlement agreement by having Missouri reimburse it for the special-sales-tax revenue it had lost under the new funding formula.

---

[1]The District had agreed in the settlement agreement to seek relief in state court, so it was removed from the case. The NAACP eventually took its place by joining the motion to enforce the settlement agreement.

-5-

The district court sided with Missouri. It concluded that charter schools should have received their per-pupil share of special-sales-tax revenue under state law all along, and nothing in the settlement agreement changed that fact. And, based on the need to provide "[e]quality and [a] path for opportunity," it went on to order charter schools to spend their own special-sales-tax proceeds on "remediation programs."

Both sides appealed. The plaintiffs continue to believe that the St. Louis Public School District should receive all the special-sales-tax revenue. And Missouri argues that the desegregation-spending condition finds no support in the settlement agreement.

II.

We review these questions de novo. *See Gilbert v. Monsanto Co.*, 216 F.3d 695, 700 (8th Cir. 2000). In doing so, we apply "basic principles of contract law," *Sheng v. Starkey Lab'ys, Inc.*, 53 F.3d 192, 194 (8th Cir. 1995) (applying state law), and interpret the settlement agreement according to its "clear, plain[,] and unequivocal" terms, *Kells v. Mo. Mountain Props., Inc.*, 247 S.W.3d 79, 85 (Mo. Ct. App. 2008).

A.

The statutory background here is complicated, but the parties' arguments are not. The plaintiffs start with the premise that, under the settlement agreement, the parties must "disregard[]" any "statutory or administrative change[]" that has a "disproportionate adverse financial impact" on the St. Louis Public School District. In their view, the change to the funding formula falls squarely within that prohibition. And Missouri's position is that charter schools had a right to that money from the moment they came into existence.

-6-

Missouri law lingers in the background because the funding formulas matter. After all, the obligations created by the settlement agreement, including "magnet schools," "[a]ll-day kindergarten," and "[s]ummer school," were all "subject to financing pursuant to Missouri Senate Bill 781." The formula, in other words, "controlled or affected the obligations" created by the agreement. *Sharp v. Interstate Motor Freight Sys.*, 442 S.W.2d 939, 945 (Mo. banc 1969) (quoting *Conn. Mut. Life Ins. Co. v. Cushman*, 108 U.S. 51, 65 (1883)).

As we know, however, the Missouri Legislature amended the funding formula in 2006. If the amendment reduced the funding available to the St. Louis Public School District, then the outcome of this case would turn on whether the "adverse financial impact" was "disproportionate." If, on the other hand, charter schools *always* had a right to their per-pupil share of special-sales-tax revenue, then there would be no "adverse financial impact" at all, much less a "disproportionate" one.

Our starting point is Senate Bill 781, which contained the original charter-school funding formula. It required the St. Louis Public School District to "pay" charter schools "an annual amount equal to the . . . adjusted operating levy for school purposes . . . times the guaranteed tax base per eligible pupil . . . times the number of the district's resident pupils attending the charter school . . . ." Mo. Rev. Stat. § 160.415.2(1) (1998). The formula was as complicated as it sounded.

It had three components. First, the "guaranteed tax base per eligible pupil," a technical reference to the state contribution. *See id.* § 163.011(11). Second, the "number of the district's resident pupils attending the charter school," another technical reference, but this time to the number of in-district students opting to attend a charter school. *Id.* § 160.415.2(1). Third, the "adjusted operating levy for school purposes." *Id.*

The last component is the focus of this case. Most Missouri municipalities fund school districts through a property-tax levy. *See* Mo. Rev. Stat. §§ 163.011(2), 164.011. But Senate Bill 781 created another option: a "*sales tax* equivalent." Mo.

-7-

Rev. Stat. § 163.011(13) (1998) (emphasis added).  Viewed against the backdrop of Missouri's (complicated) school-funding system, it referred to supplementary-funding mechanisms like St. Louis's special *sales tax*.

The parties' settlement agreement is what created the need for supplemental funding.  "[M]agnet schools," "[a]ll-day kindergarten," and "[s]ummer school" are expensive to operate.  And, under state law, property-tax hikes are difficult to pass.  *See, e.g.*, Mo. Const. art. X, § 11(c) (1998).  So rather than risk the progress the parties had made in reaching a settlement, they opted to supplement existing property taxes with a special sales tax that passed by referendum vote.  *See* Mo. Rev. Stat. § 162.1100.5 (1998); *Liddell v. Special Admin. Bd. of Transitional Sch. Dist. of City of St. Louis*, 894 F.3d 959, 963 (8th Cir. 2018).  This "sales tax equivalent," Mo. Rev. Stat. § 163.011(13) (1998), then became a part of the "adjusted operating levy" that had to be shared with charter schools, *id.* § 160.415.2(1).

The plaintiff's argument to the contrary reads out the words "sales tax equivalent."  It is also inconsistent with how Missouri funded its schools at the time.  The amount of state aid depended on the district's local tax revenue.  *See id.* § 163.031.6.  The goal was to try to equalize the amount of funding each district received on a per-pupil basis.  *See id.* (incorporating an "eligible[-]pupils" component).  If property-tax levies and sales-tax equivalents did not count, as the plaintiffs apparently argue, some districts would have reaped a windfall.  And charter schools would have been chronically underfunded.

We have reached a similar conclusion before.  Charter schools, as we have observed, are "funded by diverting federal, state, and *local* education funding away from [school districts] on a per-pupil basis."  *Jenkins v. Kan. City Mo. Sch. Dist.*, 516 F.3d 1074, 1078–79 (8th Cir. 2008) (emphasis added).  The system, in other words, is supposed to work in exactly this way.

-8-

B.

Nothing in the parties' settlement agreement is to the contrary. The plaintiffs rely on a provision creating a "Transitional District" that must "unconditionally assign[]" any "revenue[] from . . . taxes imposed through a ballot measure" to the St. Louis School Board. From there, they leap to the conclusion that none of the special-sales-tax revenue belongs to charter schools.

The Transitional District once served an important role in facilitating the transfer of power from the federal courts back to the St. Louis School Board. *See* Mo. Rev. Stat. § 162.1100 (1998). It had two relevant duties: submit the special sales tax for voter approval and "unconditionally assign[]" the revenue to the Board.

The "unconditional assign[ment]," however, did not give the Board a blank check to spend the money however it wished. In context, the language had a limited meaning: it prohibited the Transitional District from pocketing some of the money or placing conditions on its use. After all, the settlement agreement set the ground rules. The Transitional District was there to pass the money along.

The settlement agreement also contemplated the end of the Transitional District—something that happened years ago. The operative language today says that "all taxes and other receipts approved for the Transitional [District] are assigned to the [St. Louis School] Board." Notice the word that is missing: "unconditionally." Any unconditional right that once existed under the settlement agreement is now gone.

By itself, the word "assign" simply means to "transfer to another in writing." *Webster's Third New International Dictionary* 132 (2002); *see Black's Law Dictionary* 127 (8th ed. 2004) (defining "assign" as "[t]o convey; to transfer rights

-9-

or property"). The word tells us who gives what to whom. It does not tell us where the money goes after that.

State law fills in the gaps. There is no doubt that the St. Louis Public School District was entitled to keep some of it. *See* Mo. Rev. Stat. § 162.1100.2(1) (1998). But so were the charter schools, which had a right to a per-pupil "pay[ment]," *id.* § 160.415.2, that included any "sales tax equivalent" passed by St. Louis voters, *id.* § 163.011(13). And that right has existed from day one, which means later changes to the charter-school funding formula had no "adverse financial impact."

### C.

"Law of the case" does not move the ball for the plaintiffs either. They point to our statement in a previous appeal that "Senate Bill 781 . . . had not required the [St. Louis Public School] District to pay any portion of its local tax revenue to the charter schools." *Liddell*, 894 F.3d at 963. But facts are not law, and we did not purport to "actually decide[]" how charter-school funding worked last time around. *United States v. Bates*, 614 F.3d 490, 494 (8th Cir. 2010) (citation omitted).

\*   \*   \*

Missouri law provides the answer here: there has been no "disproportionate adverse financial impact" on the St. Louis Public School District because it never had a right to keep all the special-sales-tax revenue for itself. On that point, we agree with the district court.

### III.

Where we differ is on the conclusion that charter schools *must* spend their share of special-sales-tax revenue on school-desegregation measures. Likely

-10-

intended as a middle ground, there is nothing in the settlement agreement to support it.

An obvious problem is that charter schools, which did not exist at the time, were not a party to the settlement agreement. So it could not have obligated them to do anything, much less foot the bill for desegregation measures they did not need. *See Lawrence v. Beverly Manor*, 273 S.W.3d 525, 529 (Mo. banc 2009). Indeed, the Missouri Legislature created charter schools to offer students a *non*-segregated alternative to an *already*-segregated public-school system.

For these reasons, we also reject the argument that allowing charter schools to spend their money as they see fit is inconsistent with the "purpose" of the settlement agreement. *See Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428–29 (Mo. banc 2003) (explaining that a contract's unambiguous text controls). If anything, it places responsibility for desegregation squarely in the hands of the St. Louis School Board. We will not shift it elsewhere by rewriting the contract.

### IV.

We accordingly vacate the condition that charter schools must spend special-sales-tax proceeds on desegregation measures, but otherwise affirm the judgment of the district court.

_____